WILLIAM B. CRISTEA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cristea v. Commissioner
Docket No. 19728-83.
United States Tax Court
T.C. Memo 1985-533; 1985 Tax Ct. Memo LEXIS 93; 50 T.C.M. (CCH) 1306; T.C.M. (RIA) 85533; October 21, 1985. William B. Cristea, pro se. Mae J. Lew, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1980 income tax in the amount of $491. At issue is the deductibility of educational expenses incurred by petitioner while obtaining a Bachelor of Science degree in Electrical Engineering. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner resided in Boston, Massachusetts. Petitioner enrolled as a student at Northeastern University ("Northeastern" or "the University") in 1976 with the objective of obtaining *94 a Bachelor of Science Degree in Electrical Engineering. As part of the curriculum for electrical engineering students at Northeastern, petitioner was required to participate in the University's "co-op" program through the Electrical Engineering Department. As a participant in this five-year cooperative education program, petitioner had to complete a minimum of four periods of cooperative work experience approved by the Department of Cooperative Education. In this connection, the Northeastern University Bulletin for 1980 stated that "satisfactory participation in cooperative education is considered a degree requirement". Although a student at Northeastern will generally meet his cooperative work experience requirement through periods of approved full-time paid employment, alternating between periods of full-time attendance of classes, he can also fulfill the requirement by periods of travel abroad, performance of volunteer services, or specialized instruction at another institution. Mr. Cristea did not petition for a waiver of the required participation in the "co-op" program, as he might have done. The parties have stipulated that "[t]he classes required to be completed for *95 a bachelor's degree in electrical engineering that Northeastern University are the same for each student, whether or not the student participates in the Co-op Program". After about two years of full-time class attendance petitioner began in July 1978 the first of what was to become four periods of cooperative work experience with the Town of Norwood's Municipal Light Department (hereinafter "the Town of Norwood", "Norwood", "the Town", or "the Municipal Light Department"), in accordance with an arrangement between Norwood and the University. He could not have obtained the Norwood job but for the fact that he was a student at Northeastern pursuing a course of study for a degree in electrical engineering at that institution, and his employment was dependent on his status as "a student in good standing enrolled in the Cooperative Education Engineering program at Northeastern University". Petitioner's four periods of full-time work experience at Norwood consisted of two periods of about six months each and two periods of about three months each, a total of about 18 months. Petitioner attended classes full-time during the time intervals between any two consecutive periods of his work *96 experience. His final work period ended in early January 1981. Petitioner's job at Norwood was classified as a "Junior Electrical Engineering Aide". His duties were of two general types. The first can be characterized as supervised entry level engineering duties: designing transformer pads, calculating electrical usage, and inspecting and locating faults in the electrical system. The second set of duties was more administrative in nature, including the purchase of equipment and issuance of equipment and tools to linemen. He was compensated on an hourly basis, beginning at $4.02 per hour at the start of his first period in 1978 and rising in five stages to $5.25 per hour for his final period from June 30, 1980, through January 3, 1981. The normal work week consisted of 40 hours. Petitioner was not entitled to any sick leave, vacation pay, or any other fringe benefits. During the taxable year 1980, he worked at Norwood from early January through March 29, and from June 30 through December 31, attending classes full-time during the interim period. His total compensation for that year from Norwood was $8,683.65. Petitioner graduated from Northeastern in September of 1981 with *97 a Bachelor of Science degree in Electrical Engineering. After graduation, he was employed by Chas. T. Main, Inc., Consulting Engineers, as an Assistant Engineer in its Thermal Power Division. He could not have obtained his job with Chas. T. Main, Inc., without his degree in engineering. Petitioner's duties at Chas. T. Main, Inc., were to prepare basic designs and complete minor engineering assignments under supervision and to assist in the preparation of specifications, reports, data tables, and project studies. When he began his employment with Chas. T. Main, Inc., in 1981, his starting salary was approximately $22,000 a year and he was entitled to two weeks paid vacation, sick leave, and medical insurance. As a result of his successful completion of an accredited four-year college engineering curriculum, petitioner would qualify to sit for the professional engineer's certification examination under Massachusetts law after fewer years of work experience than a person who had not so completed college. [1]A certificate of registration as a professional engineer is required in Massachusetts *98 in order to practice independently as an engineer. A person who is trained in engineering but who does not have the certificate can do engineering work only "under the direct responsibility, checking and supervision of a person holding a certificate". Mass. Gen. Laws Ann., c. 112, section 81R(d). Petitioner plans to obtain a professional engineer's license sometime in the future. *99 With his college degree, petitioner became qualified for employment as an entry level engineer in an engineering firm or corporation with a policy of developing professional engineers solely from college graduates who would require at most four years of training (see fn. 1, supra) to qualify for the certification examination. He did in fact obtain such a position with Chas. T. Main, Inc. On his 1980 income tax return, petitioner reported as income the $8,683.65 wages received for his services with the Norwood Municipal Light Department and deducted $3,545 as educational expenses. Of this latter amount, $3,158.13 represented tuition payments made to Northeastern. The balance is not accounted for, but the Commissioner does not contest its classification as an educational expense. In his notice of deficiency, the Commissioner disallowed the $3,545 deduction on the ground that the courses petitioner took "are part of a program of study that will qualify [petitioner] for a new trade or business". OPINION Petitioner's intermittent work for the Town of Norwood was no ordinary job. To be sure, he was thus, in a sense, employed to perform elementary engineering work and *100 would have been entitled to deduct such job related expenses as the cost of work clothes and the like. His educational expenses, however, stand on an entirely different footing. Petitioner was a candidate for a degree in electrical engineering at Northeastern. His work at Norwood was merely part of that educational process -- treated both by Northeastern and the Town as a cooperative educational program in which periods of prior approved full-time work alternated with periods of full-time class attendance. The fact that he received compensation while involved in this cooperative experience "does not alter his true status as a 'cooperative student' who left his classroom at the university at regular intervals to test his career interests and aptitudes on work assignments". Gallery v. Commissioner,57 T.C. 257, 263 (1971). "[P]etitioner herein worked because he studied. He did not study because he worked". Jungreis v. Commissioner,55 T.C. 581, 593 (1970) (Tannenwald, J., concurring). His educational costs in these circumstances could hardly qualify as "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business". *101 Section 162(a), I.R.C. 1954. Moreover, the deductibility of the educational expenses in issue is foreclosed by the specific provisions of section 1.162-5(b)(3), Income Tax Regs., since they were "part of a program of study being pursued by [petitioner] which will lead to qualifying him in a new trade or business", as determined by the Commissioner in his notice of deficiency. Petitioner, however, contends in his petition that the education would not qualify him for a new trade or business because he was already an established engineer by reason of his "co-op" employment with the Norwood Light Department when he incurred the educational expenses. The record before us establishes that petitioner was employed, not as an engineer, but as an engineering aide in 1980 when he deducted his educational expenses. The evidence also demonstrates that those expenses were for education which, along with four years of work experience and a passing score on the certification examination, will qualify him for the new trade or business of professional engineer. *102 The Court has often found non-deductible those educational expenses incurred in a person's advancement from an assistant or apprentice to a licensed or registered professional. See Robinson v. Commissioner,78 T.C. 550, 557-558 (1982) (licensed practical nurse to registered nurse); Reisinger v. Commissioner,71 T.C. 568, 574-577 (1979) (licensed practical nurse to physician's assistant); Glenn v. Commissioner,62 T.C. 270, 275-276 (1974) (public accountant to certified public accountant); Jungreis v. Commissioner,55 T.C. at 591 (teaching assistant to college professor); Johnston v. Commissioner,T.C. Memo. 1978-257, 37 TCM 1113, 47 P-H Memo T.C. par. 78,257 (1978) (law clerk to lawyer); Antzoulatos v. Commissioner,T.C. Memo. 1975-327, 34 TCM 1426, 44 P-H Memo T.C. par. 75,327 (1975) (intern pharmacist to registered pharmacist). The same increase in level of professional judgment, authority, supervisory powers and skills which required labeling these professional advances as new trades or businesses, requires characterizing petitioner's advance to Professional Engineer from *103 Engineering Aide or Assistant Engineer as a new trade or business. His college education will lead to qualifying him to make this advance to a new trade or business even though he has not as of yet fulfilled the other requirements for such advancement. The fact that his education does not, in and of itself, qualify the taxpayer for this new profession is no impediment to the conclusion that the educational expense is not deductible. The relevant regulation requires only that the program of education pursued by the taxpayer "will lead to qualifying him in a new trade or business" (emphasis supplied). Section 1.162-5(b)(3)(i), Income Tax Regs. Expenses for education which must be combined with a licensing examination in order for the taxpayer to qualify for a new business are not deductible. See Robinson v. Commissioner,78 T.C. at 550; Reisinger v. Commissioner,71 T.C. at 570; Glenn v. Commissioner,62 T.C. at 271; Johnston v. Commissioner,T.C. Memo. 1978-257. Similarly non-deductible *104 are expenses for education which must be combined with both a licensing examination and work experience in order to qualify the taxpayer for a new trade or business. See Autzoulatos v. Commissioner,T.C. Memo. 1975-327. Neither does the fact that petitioner could have chosen an alternative route to qualify for his new profession, one that does not require education but requires 12 or 20 years of work experience (see paragraphs 1(d) and (e) of the Massachusetts statute in fn. 1, supra), justify the deductibility of the educational expense that he chose to incur. See Reisinger v. Commissioner,71 T.C. at 570 (physician's assistant in Maryland can qualify on the basis of training, skill, experience or background, but those who choose to qualify through education and licensing cannot deduct the educational expense). Indicative of the fact that petitioner's education will lead to his qualifying in the new trade or business of professional engineering is his employment, after graduation, with Chas. T. Main, Inc. Compare Burnstein v. Commissioner,66 T.C. 492, 494 (1976). Such employment was available only to one who had a degree *105 in engineering, so that the employee, upon successfully passing the licensing examination after four years of work experience, would qualify as a registered professional engineer in Massachusetts and would remain eligible for employment with Chas. T. Main, Inc. Petitioner's Bachelor of Science degree in engineering was the crucial first step in his travel along a path culminating in his qualifying for the new trade or business of registered professional engineer. The educational expenses incurred in attaining that degree are not deductible. Decision will be entered for the respondent.
Footnotes
1. Mass. Gen. Laws Ann., c. 112, sec. 81J, provides in part: The following shall be considered as minimum evidence satisfactory to the board that an applicant is qualified for registration as a professional engineer * * * 1. * * * * * * (b) A graduate of an engineering curriculum of four years or more approved by the board as being of satisfactory standing; and with a specific record of an additional four years or more of experience in engineering work of a grade and character which indicates to the board that the applicant may be competent to practice engineering, and who passes or has passed the required written examination in the fundamentals of engineering, and the required written examination in the principles and practice of engineering. * * * (c) An applicant, having satisfactorily completed a four-year college curriculum in engineering or in related science other than the ones approved by the board and eight years or more of progressive experience in engineering work of a character and grade which indicates to the board that the applicant may be competent to practice engineering, and who passes or has passed the required written examination in the fundamentals of engineering designed to show knowledge and skill approximating that obtained through graduation in an approved four-year engineering curriculum, and the required written examination in the principles and practice of engineering * * *. (d) An applicant having completed twelve years or more of progressive experience in engineering work of a character and grade, including five years or more in responsible charge of engineering work, which indicates to the board that the applicant may be competent to practice engineering, and who passes or has passed the required written examination in the fundamentals of engineering designed to show basic engineering knowledge and skill and the require written examination in the principles and practice of engineering and an oral examination when required by the board * * *. (e) An applicant, with a specific record of at least twenty years of lawful practice in engineering work, of which at least ten years have been in responsible charge of important engineering work, and of a grade and character which indicates to the board that the applicant may be competent to practice engineering and who has passed an oral or written examination in the principles and practice of engineering, and is otherwise qualified * * *.↩